Our final case of the day is Dockery v. Blackburn. Mr. Bressani. Good morning, Your Honor, and may it please the Court. Your Honor, the lower court erred in this case in denying qualified immunity to both Sgt. Blackburn and Officer Higgins. Before we discuss the merits, I think we need to discuss appellate jurisdiction under Johnson and our en banc opinion in Stinson. Absolutely. Well, obviously, I would contend that this court does have jurisdiction over this appeal for the following reasons. The constitutionality of an officer's conduct in light of facts that are uncontrovertedly depicted. Unfortunately, the facts aren't uncontroverted. The district court denied the motion to dismiss because the district court found that there is a bona fide factual dispute about the direction of causation. Whether misconduct caused the police to use the taser or whether the use of the taser caused involuntary reactions. Now, we can't resolve that factual issue. I don't know how, given the basis of the district court's decision, this appeal is compatible with Stinson. Because Johnson does not prevent this court from reviewing a decision just because the lower court found that there were factual issues. Yes, it does. It says that there is no appellate authority to review the question whether there is a factual dispute. There is only authority to resolve legal issues about legal uncertainty. That was the precise holding of Johnson. Right. And the factual disputes in Johnson had to do with historical facts, had to do with whether or not police officers were actually at the scene. Yes, we have a different factual dispute here. Right. I'm sorry. We have a different factual dispute here. But the principle of cases like Johnson is not specific to the kind of factual dispute. Now, is it your position that there is no factual dispute, maybe in the sense that the only legally relevant question is how things appeared to the officers rather than how things were in fact? That's right. That's exactly right, Your Honor. Our view is that the videotape was viewed by Judge Gilbert, with all due respect, from the subjective view of Mr. Dockery. And that subjective intent is not. Look, as I have phrased the issue, nothing depends on there being a video. Okay. It depends on whether causation matters at all. Right? If the district court identified as a disputed issue something that is irrelevant as a matter of law, then I suppose one can proceed. Right. But how one shows, talking about the video is just to say we think the district court was wrong about that issue. Right. Are you arguing that the district court has identified as disputed an issue that is legally irrelevant, with or without a video? Yes. Mr. Dockery's subjective intent. I mean, what the district court should have done was— This is not a question about intent. This is a question about causation. Okay. The video shows, certainly, the officer's conduct. The video shows what the officers did. I was trying to get you to talk about this legal issue without regard to the video. Obviously not wholly successful. Well, I mean, when you look at—the video shows the whole picture. Is there any way to get you to talk about this legal issue without regard to the video? The officer's testimony? No. The officer's testimony does not answer legal questions. Mr. Dockery's testimony? No. Do you know what answers legal questions? When you look at—well, I don't know how to answer that question. It has nothing to do with anybody's testimony or with videos. It has to do with what—whether the standard, whether the legal standard is objective or subjective. Right. That depends on case law. Right. Are you relying on any in particular? Oh, absolutely, Your Honor, we are. We're relying upon Abbott v. Sangamon County. We're relying upon Brooks v. City of Aurora. I mean, those cases stand for the proposition— You're not relying on Graham v. Conner by any chance? Oh, of course. Of course, Graham v. Conner, we're relying upon those. But I guess I was focusing specifically on cases that involve the use of a taser in this court or in the case of Brooks v. City of Aurora, the use of pepper spray, where you had a situation where an individual claimed that he was actually complying with the taser, trying to comply, but his actions belied those words. And that's the situation we have here. And a police officer or a reasonable police officer, in facing those same circumstances, objectively could have believed that the plaintiff was actively resisting arrest, physically resisting arrest, and in the case of Mr. Daugherty, physically assaulted a fellow police officer. Those are the facts of this case. Those facts are undisputed. And those are very similar facts that occurred in Abbott v.— They are not the facts of this case. Those are the facts of this case if factual issues are resolved in favor of your clients. The fact of the case is that the plaintiff made certain physical motions. Whether those motions were an assault is a completely different issue. Based on an objective view of those motions, I believe that the lower court got it wrong, Your Honor. Based on an objective view of those motions, any reasonable police officer could have believed that Mr. Daugherty was not only actively resisting but had not ceased resisting at the point that the first case of appointment took place. If they're looked at in the light most favorable to Mr. Daugherty, why did the lower court not get it right and say this is a question that needs to be determined by a jury as opposed to us? Because I don't believe that the lower court used an objective standard. I believe the lower court used a subjective— the lower court considered the subjective intents of Mr. Daugherty to find there was a disputed issue of fact. No, he said in his order, page 10 of 18 in the CMF system, quote, In other words, even if a plaintiff demonstrates that excessive force was used, he also must further establish that it was objectively unreasonable for the officer to believe that the force was lawful. That is, the plaintiff must demonstrate that the right to be free from the particular use of force under the relevant circumstances was clearly established, citing the Abbott case. Right, but I think underlying Judge Gilbert's holding was his adoption of Mr. Daugherty's subjective intent. For example, when Mr. Daugherty says, I did not intentionally kick at Officer Higgins. Well, when you look on the video and you see those circumstances, and objectively you would conclude or the officer could conclude that he did intentionally kick at the officer. Right, prior to that, he was actively fighting with the officers, preventing him from being handcuffed in the booking room, and he saw that Sergeant Blackburn had pointed the taser at him and even challenged, and he admits to this in his deposition, even challenged Sergeant Blackburn, what are you going to do, tase me? Those are objective indications. Those facts would play a role in any objective assessment of what occurred here, and so then he falls to the floor completely on his own, and then you see him roll and kick and his feet kick in the direction of Officer Higgins. Objectively, Officer Higgins could reasonably believe that he was being kicked at, that he was being assaulted, and if those are the facts of the case, Well, don't we need further evidence even to determine how officers respond to this? How are they trained about the effects of taser shots? If officers are routinely trained that a taser may cause involuntary muscle contractions, then why would an officer objectively take signs of muscle contractions as showing resistance rather than the effects of the taser? Well, that kick that took place that I just referred to occurred before there was any taser deployment. But from the video you can't tell that. It appears that perhaps Officer Higgins used the pressure of the taser to shock as opposed to shooting the probes. You can't tell. And I would disagree with that, Your Honor. And even the plaintiff agrees in their briefing that the initial taser deployment occurred at 53 minutes and 56 seconds. And you could even see at that point in the video, you can see the flash of the taser go. That's the initial deployment of the taser. Right. The kick occurs before the taser is fired because we know from the taser device itself when it was fired. Okay. The kick occurs at 17, I've got 42 or so. So you're saying that was before the taser was deployed, even by pressing? Absolutely. And I see I'm getting down on time here, and I can reserve the rest for rebuttal. But I wanted to answer your question, though. The kick occurred before there was any taser deployment whatsoever. The plaintiff admits that. And that kick, based on a view of the video, objectively would be an assault on the officer. And under the case law, the officer is permissible to use a taser under those circumstances. And I'll reserve my remaining seven seconds. You have no remaining time, Counsel. Thank you, Judge. Mr. Pye. Good morning, Your Honors, and may it please the Court. David P. on behalf of Plaintiff Affiliate Patrick Daugherty. This Court should affirm the denial of qualified immunity because, one, the Affirm or dismiss? Well, they should affirm the lower court in its denial of qualified immunity, Your Honor, because, first, the facts here make out So you think we have appellate jurisdiction, notwithstanding Stinson? The jurisdiction here is very limited, Your Honor. This Court can consider legal issues only on this appeal. The defendants have raised at least one, which is that they think that under well-established law, the defendants had no way of knowing that they could not use a taser on a man who was not resisting, obeying orders, and laying prone on the floor of a police department. They've raised that legal issue, and that is within the jurisdiction of this Court to consider. We would say that the clear law established under Abbott and Cyrus But the videotape contradicts your statement of the facts as just delivered from the podium. The videotape shows exactly the opposite of what you just said. He was not lying prone on the floor when the taser was used, either initially or any of the subsequent applications of the taser, and he was actively resisting. That's what is shown on the videotape. So under Scott and Plumhoff, we don't accept your statement of facts when it is utterly contradicted by the video. You're right, Your Honor, that this Court has jurisdiction to consider blatant contradictions of the facts as presented by plaintiff. So we accept what's in the videotape as the facts of the case, which show the officers using a taser on an actively resisting suspect who just assaulted an officer or attempted to assault an officer. He has not submitted to their authority. That's very clear. He outweighs the female officer significantly, and he has not submitted to the handcuff demand of the two officers. Your Honor. And the case law makes it very clear that a taser use in that situation is objectively reasonable. Your Honor, I would disagree that he was actively resisting, and certainly that the video blatantly contradicts his version of the facts. That's what the video shows. He had not submitted to their authority, and he had not submitted to the arrest. They were trying to handcuff him, and it's very clear that he was not submitting to that. Your Honor, if we follow the events that are displayed on the video, Mr. Dockery was being fingerprinted by Officer Higgins. At a certain point, Officer Higgins tells Mr. Dockery that he wants to handcuff him to a bench in the adult booking room video. Now, there's no sound in the surveillance video, so we don't know this, but that comes out through the testimony. You can clearly see at minute 1201 that Mr. Dockery moves towards the bench. He's obeying the order to be handcuffed to that bench, but then Officer Higgins grabs his right arm and pulls it behind his back and apparently wants to handcuff him standing up. Mr. Dockery at no time pulls his right arm away from Officer Higgins. He's obeying the command. He begins to resist violently and advances toward the female officer who's coming around from the desk to assist Officer Higgins, and that's when the entire situation becomes very violent. And he starts kicking and flailing and actively resisting, physically resisting. He's a very large man. Well, Your Honor, I'd like to point to the standard here is what a jury could reasonably conclude. A reasonable juror... Was objectively reasonable on the part of the officers. That's the legal question. Were the officers, for purposes of qualified immunity, behaving in an objectively reasonable manner in the use of the taser? That's right, Your Honor. And as the lower court found, when viewed in context, Mr. Dockery's supposed kick or his supposed resistance is susceptible to multiple reasonable interpretations. What reasonable interpretation could there be about the activity preceding the first taser shock? Preceding the first taser shock, and again, we have to take this from the perspective of a reasonable officer knowing what the defendants knew at that time. And what they knew is that Mr. Dockery obeyed the command to be handcuffed. He obeyed the command to put his arms behind his back, and at a certain point, both officers were behind him in the video. What the video doesn't show is that they were attempting to handcuff him with a single pair of handcuffs, which they both knew from earlier that day was impossible due to Mr. Dockery's inflexibility. It was only possible by putting him through great pain. And so you can see at that point in the video, Mr. Dockery wince and contract in pain as his arms are hyperextended. That causes him to fall to the ground, and as he's falling, his legs fly up, and he begins flopping around. The reason that Officer Higgins' head is anywhere near Mr. Dockery's lower extremities is because he bent down towards the ground as Mr. Dockery fell as well. And as the lower court found, that could be reasonably interpreted as a gesture that is not an attack or a physical kick or a kick at Officer Higgins, but rather just a reaction to falling and trying to get up. And I think it's important to compare this to other cases in other circuits that have looked at similar facts. So in the Fifth Circuit in Ramirez v. Martinez, it was a very similar case. There, the defendant officers were seeking qualified immunity on the ground that the plaintiff supposedly tried to punch them. This was captured on video, so unlike this case, it was a punch. Let me ask whether you are prepared to offer evidence that well-trained officers can distinguish intentional resistance from involuntary spasms. Well, I think there is – you are not allowed – The answer to that question is yes or no, and then you can explain. Could you repeat the question, Your Honor? Could you repeat that question, please? Are you prepared to offer evidence that well-trained officers can distinguish between intentional resistance and involuntary spasms? Yes, absolutely. Yes, they can. No, look, I didn't ask whether you think they can. I asked about evidence. Did you tell the district court that you're going to offer such evidence? You certainly didn't tell us. Well, Your Honor, in these sorts of cases, you cannot present expert witnesses, for example, on the question of reasonableness of the use of force. And I think answering your question would go to the core issue, and the reason that you can't introduce expert testimony on that is because that is precisely a question for the jury to decide. I must say I don't understand that at all. Well, Your Honor, the jury will have to put themselves in the shoes. No, the jury will be extremely lucky to get to a jury counsel. The question, legal question, is how objectively officers respond to what they saw, whether it's objectively reasonable. That's the question under Graham against Connor. Whether reasonable officers respond in a particular way to arms flailing or legs flailing depends in part on whether they're able to distinguish voluntary behavior from involuntary behavior. And since that is pertinent to what a reasonable officer responds, I would think one would need evidence, but there appears to be none in this record. And you, after some ambiguity, don't sound like you want to introduce it. Well, Your Honor, I would point to the cases Abbott and Cyrus from this circuit. In both cases, on appeal, the question was whether or not an arrestee who was tased a first time had made an inadvertent or an intentional move to flee. And specifically, I'm looking at Cyrus. There, after the first tase, the arrestee barely rolls. I must say, I was not asking about your interpretation of cases. I was asking whether you had offered or were prepared to offer particular evidence. And I think that the answer is no. If the answer is not no, please explain. Well, Your Honor, I think that, you know, I'm not talking about my interpretation of these cases. I'm talking about what the court can decide as a matter of law on an appeal of qualified immunity. If they look at the video or if they look at the circumstances, the court can decide whether or not an officer should be able to make a determination about involuntary motions or voluntary ones. In Cyrus, there was no question of whether or not there would be evidence at trial. The question was, after somebody was tased once, whether or not their barrel roll away from an officer was an intentional attempt to flee or an involuntary reaction to being tased. There, it was not an issue of whether or not there needed to be evidence presented at trial. The point was that this court made is that that is a question for a jury to determine. On the basis of what? What they read, what they see on TV? Juries determine things on the basis of evidence in the record. And if you don't want to introduce any evidence on that, we don't allow juries just to make things up as they go along. I agree, Your Honor. And we try hard not to do that on appeal. What will come out at trial is the testimony of the parties and the video. The video conclusively shows that Mr. Donovan… I just want to be sure. That's all you want to offer. You don't want to offer anything other than testimony and the video. You don't want to offer evidence about how reasonable officers distinguish between voluntary and involuntary movements. Your Honor, we may very well do so to the extent that it's allowed because it's not… to the extent that a testimony is allowed because it's not going to the ultimate question of whether the behavior was reasonable. Certainly, you would introduce that type of evidence. I see I've exhausted my time. Mr. Pia, I do have one quick question. Do you agree that when Mr. Daquiri first fell, that at that point in time, the taser had not been deployed? Yes, Your Honor. And immediately after that, when he's on the ground scissor-kicking three or four times, do you agree at that point the taser had not been deployed? Correct, Your Honor. Yes. Well, thank you very much. Thanks to both counsel. The case is taken under advisement and the court is in recess. Thank you. Thank you. Thank you.